## Richmond

### MILLER'S TRUSTEES V. SMITH & OTHERS.

#### March 13, 1913.

1. RES JUDICATA—*Costs.*—A decree confirming a master's report, which makes no mention of costs except to deduct a small amount from the fund for distribution "for unpaid and additional costs to accrue," is not *res judicata* as to all costs since accrued.
2. COSTS—*Fee Bills—Correctness.*—Fee bills of court officers are to be taken as *prima facie* correct.
3. APPEAL AND ERROR—*Res Judicata.*—An adjudication by this court that a party to a cause has no interest in a tract of land, or in the proceeds arising from the sale thereof, is final and conclusive on such party, and is not subject to further investigation or controversy when the case is remanded to the trial court.

Appeal from a decree of the Circuit Court of Rappahannock county.  Decrees for the complainants.  Defendants appeal.

*Reversed*

The opinion states the case.

*H. G. Moffett* and *J. A. C. Keith,* for the appellants.

*Munford, Hunton, Williams & Anderson,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

*Affirmed.*

The litigation in this cause, in varied forms, has reached

this court on three former appeals: *Smith* v. *Miller*, 98 Va. 535, 37 S. E. 10; *Miller* v. *Smith*, 109 Va. 651, 64 S. E. 956, and *Miller* v. *Turner, Judge*, 111 Va. 341, 68 S. E. 1007.

This appeal is taken by R. E. Miller and John B. Miller in their own right and as trustees under a deed of trust executed to them by John Miller October 5, 1872, to two decrees of the circuit court, the one entered at its March term, 1911, ruling upon certain exceptions taken to the report of Commissioner W. C. Armstrong as to what would be a proper disposition of all the funds under the control of the court in the cause; and the other entered at the November term, 1911, denying R. E. and John B. Miller a rehearing of the decree entered at the preceding March term. For convenience we shall in this opinion refer to the former appeals in the cause as first appeal, second appeal, or third appeal, as the case may be.

The origin of this long-drawn-out litigation is the deed executed by John Miller on October 5, 1872, by which the grantor conveyed all of his property, real and personal, to his two sons, John B. and R. E. Miller, to secure the payment of grantor's debts, in which deed, after providing for the payment of his debts, the grantor, in consideration of love and affection he bore to R. E. Miller, John B. Miller, Eliza E. Jones, wife of E. T. Jones, and Mary A. Smith, wife of T. T. Smith, they being his four children, conveyed to each, respectively, certain lands set out in the deed, reserving an annuity of $100 to himself on each tract of land so conveyed to each child, and for equality of division he charged the tract conveyed to John B. Miller with the payment of his debts more than that conveyed to Mrs. Smith, the tract conveyed to R. E. Miller with $1,435 more than that conveyed to Mrs. Smith, and the tract conveyed to Eliza E. Jones with $383 more than that conveyed to Mrs. Smith, so that the grantor, in the matter of equalization

among his children with respect to the lands conveyed to them, respectively, and the payment of the grantor's debts, made the land acquired by Mrs. Smith under the deed the unit of value, and upon which she was charged with the payment of $7,868.58.

The deed further provided, that after the payment of said sums of money, with interest from the date of the deed, "if there should be any of said debts unpaid which the residue of the property conveyed in trust for the payment of said debts shall not be sufficient to discharge, then each of said children shall pay one-fourth part of said debts."

John Miller had lands other than those conveyed to his four children, which other lands he directed to be sold, as well as his personal property, and together with the charges upon the lands conveyed to John E. Miller, Robert E. Miller and Mrs. Jones, for equality of division, he devoted to the discharge of his indebtedness and provided that if the funds so devoted should prove insufficient for that purpose, then each of his children should pay one-fourth of his indebtedness remaining unpaid, and should the proceeds of the sale of the lands directed to be sold and the charges on the respective lands, for equality of division, be more than sufficient to pay said indebtedness, then the surplus so remaining was to be divided among his four children.

The trustees in said deed settled their accounts as such from time to time, which accounts were sought to be surcharged and falsified, and were the subject of litigation in the circuit court and in this court on the first appeal in this cause. Of the matters litigated on that appeal, we need only to refer to that relating to the refusal of the lower court to set aside a sale of the "Hog Back" tract of land which had been sold by the trustee under said deed of October 5, 1872, and purchased at said sale by John B. Miller; and it was held that the said sale should be set aside, and as the result of setting aside that sale and the

sale of the residue of another tract of 275 acres to the same purchaser, an account should be taken of all rents, issues and profits derived by John B. Miller from the said lands since his purchase thereof, with which he should be debited; and, as the sales were only constructively fraudulent, and not in any wise tainted with actual fraud, he (John B. Miller) was entitled to be credited with the purchase money paid by him, with interest thereon, as well as the value of all permanent and substantial improvements made by him on the lands since he purchased the same.

The case having been remanded to the circuit court, the lands before mentioned were resold at a price in excess of that at which they had been bought at the first sale; accounts were ordered, reported and excepted to, with the result that certain decrees were entered, by which John B. Miller was charged with a certain sum of $600, with interest thereon, etc., credited to him in his former accounts as having been paid to Mary Miller's administrator, and with one-fourth of the proceeds of the resale of the "Hog Back" tract. On appeal to this court (second appeal) from those decrees, there were two assignments of error, the one relating to the charge against John B. Miller in his account as trustee of the $600, with interest accrued thereon, and the other relating to the charge against him of one-fourth of the proceeds of the resale of the "Hog Back" tract; and it was by this court held that when the circuit court entered its decree and that decree was appealed from, and with respect to all items of surcharge and falsification was affirmed by this court, it was a finality, not only with respect to the particular item to which the attention of the court was called, but with respect to all the accounts which the trustees had settled before the institution of the suit, and, therefore, as the parties in interest had ample opportunity to surcharge and falsify the credit to John B. Miller of the $600, as paid to

the administrator of Mary Miller April 14, 1881, but neither in the court below nor in this court referred to it, the matter, by the decree of this court on the first appeal became *res adjudicata,* and the circuit court had erred in charging John B. Miller with the sum of $600 and accrued interest. The court also held that the circuit court erred in charging Miller with the payment to E. T. Jones of one-fourth of the proceeds of the resale of the "Hog Back" tract, it appearing in the record that Miller had purchased from Jones his interest in that land and paid him the purchase price therefor.

It appears, therefore, that upon the entry of this court's decree on the second appeal, June 25, 1909, and its decree entered at its September term, 1909, at Staunton, denying the prayer of the petition filed by E. T. Jones for a rehearing of the decree of the 25th of June, 1909, all controversies between the parties litigant with respect to the accounts theretofore settled by R. E. and John B. Miller, trustees, were at an end; that John B. Miller, in his own right, and as assignee of the interest of R. E. Miller and of E. T. Jones in right of his wife therein, was entitled to three-fourths of the proceeds of the resale of the "Hog Back" tract of land, and Mrs. Smith to the remaining one-fourth; and that John B. Miller was entitled to recover of E. T. Jones, Mrs. Smith and R. E. Miller the costs assessed against them by this court on the second appeal, became *res adjudicata,* leaving nothing to be done by the circuit court except to distribute the fund remaining under the control of that court among the parties entitled thereto, pursuant to the decrees of this court on the second and third appeals, the latter being a mandamus proceeding against Turner, Judge, involving solely the question whether John B. Miller should himself pay one-fourth of the costs assessed by this court on the second appeal against E. T. Jones, or E. T. Jones be required to pay the same, this

court holding on said third appeal that John B. Miller was entitled to recover of E. T. Jones said costs.

By prior decrees in the cause, not appealed from, it had been determined that John B. Miller was entitled to the one-fourth interest of both E. T. Jones and R. E. Miller in the proceeds arising from a resale of the "Hog Back" tract, and when the cause was remanded after the third appeal to this court, the trial court, by decree entered at its May term, 1910, re-committed it to Commissioner Armstrong with directions to proceed to execute the former decree of reference; to report a proper disposition of all the funds in the cause, and to disburse the fund derived from the resale of the "Hog Back" tract as follows: "One-fourth to Mrs. M. Anna Smith, and the remaining three-fourths thereof to John B. Miller, the same including his share and the shares of R. E. Miller and E. T. Jones, and will disburse all other funds as follows: One-fourth to R. E. Miller, one-fourth to E. T. Jones, one-fourth to Mary Anna Smith, one-fourth to John B. Miller, and said commissioner will make such a complete distribution of all funds in the cause that a final decree may be taken."

It appears that all parties in interest have paid the sums charged to them in the deed of October 5, 1872, for equality of division, with accrued interest thereon, except Mrs. Smith; John B. Miller having paid to this trust fund the $6,078.44 charged against him, with the accrued interest thereon, as per decree in the cause of December 11, 1902, and by same decree Mrs. Smith was required to pay the $3,868.58 charged against her for equalization, with interest thereon from October 5, 1901, that being her share of the debts of John Miller remaining unpaid, but this sum she has not fully paid, the balance of the same due by her with accrued interest thereon to November 15, 1910, being $1,139.94.

Commissioner Armstrong, pursuant to the decree of the May term, 1910, filed his report on November 12, 1910, by

which he ascertained and reported that the funds in the cause were as follows:

"(a) . . . in the Rappahannock National Bank
      . . . the sum of $726.09, with accrued interest ...............................$   747 87
(b) Fund in hands of H. G. Moffett, comr....    57 49
(c) Fund due by M. Anna Smith, with interest
      on same from July 4, 1906, to November
      15, 1910 ..............................  1,139 94

      Total (aggregate) of funds under control of court .....................$ 1,945 30"

That said funds should be distributed as follows:

"In this cause John B. Miller is entitled to receive the following sums:

"(a) Three-fourths of the net proceeds of the
      resale of the 'Hog Back' tract ($1,412.86),
      with interest on same from date of collection to November 15, 1910.............. $1,481 58
(b) Decree in favor of John B. Miller for $100,
      with interest from April 12, 1892, to November 15, 1910 ......................    211 56
(c) Decree in favor of John B. Miller (for
      taxes), with proper interest, seven years..     80 94

                                              $ 1,774 08

"This sum should be abated by the sum of
      $69.75, amount paid to H. M. Dudley by
      Rappahannock National Bank, with interest from May 11, 1907, to November 15,
      1910 ..................................     84 45

                                              $ 1,689 63

"In this cause M. Anna Smith is entitled to receive ¼ of the net proceeds of the resale of the 'Hog Back' tract ($1,412.86), with interest on same from date of collection of same to November 15, 1910.............. $   493 86

"Aggregate of sums to be disbursed......... $ 2,183 49
"From which deduct aggregate fund in hand under the control of the court........... 1,945 30

                                         $   238 19

"This sum of $238.19 is a charge upon the 'estate of John Miller, and it appearing that there are no funds in the hands of the trustees or administrator, the same will have to be made up by assessment of ¼ thereof against each of his distributees."

The remaining portions of the commissioner's report dealing with questions as to costs, and stating how they should be provided for and paid, need not be set out here.

Mrs. Smith filed exceptions to said report, numbered 1, 2, 3, 4 and 5, and E. T. Jones filed two, numbering same as 1 and 2. Of the exceptions filed by Mrs. Smith, No. 2 and 3 were overruled, No. 1 partly sustained, and Nos. 4 and 5 fully sustained.

No. 1 is an exception to the report of Commissioner Armstrong, because he failed to credit Mrs. Smith with certain items reported in her favor in his report dated July 15, 1908, and in sustaining this exception in part it is manifest that the learned judge below overlooked the fact that the whole of the report of July 15, 1908, was based upon the supposition that John B. Miller owed the trust fund, for the payment of the debts of John Miller, $600, with interest from April 14, 1882, making a total sum of $1,543.70 due to said trust fund by John B. Miller, and that together

with the amount to the credit of the fund in bank, making a total of over $2,000, provided a surplus for division among the heirs of John Miller and out of which grew the amounts allowed to Mrs. Smith in the report of July 15, 1908; and that when this court entered its decree disposing of the second appeal in this cause, the $600 item with the accrued interest thereon, upon which the items claimed by Mrs. Smith in her exception No. 1 depended, was eliminated as well as the item of $400, the one-fourth interest in the purchase of the "Hog Back" tract in favor of E. T. Jones; instead of a surplus fund for distribution there was in fact a deficit of funds to pay the debts against John Miller. The $600, with the accrued interest thereon, being the fountain and source from which came the items allowed Mrs. Smith in the report of July 15, 1908, when that fund was eliminated, the said items were also eliminated, and the report necessarily had to be recommitted for another statement as to the status of the trust funds based upon a deficit instead of a surplus. We are of opinion, therefore, that exception No. 1 under consideration should have been wholly overruled.

Exception No. 4 is: "The question of costs in lower court prior to appeal of John B. Miller was fixed by decree of July, 1908, and is *res adjudicata;*" and the lower court in sustaining the exception took that view.

With respect to the ruling sustaining this exception, we deem it only necessary to say that in the report of Commissioner Armstrong of July 15, 1908, under review in *Miller, Trustee,* v. *Smith, &c.* (second appeal), the only mention of costs is where the commissioner deducts $25.53 for unpaid and additional costs to accrue, and in the very nature of the case the decree entered on the report could not be *res adjudicata* as to all costs since that report. Exception No. 4 should have been overruled.

Exception No. 5 relates to certain fees due to Coons,

clerk, and other officers of the court in this cause, as reported by the commissioner, and the exception was sustained upon the ground that there was no evidence in the record to show that these costs have not already been paid. The exception should have been overruled. The fee bills of these officers were to be taken as *prima facie* correct, and if any question was raised as to their correctness, or that they were not unpaid, it became a matter of inquiry, and if it was found that they were due and owing, they of course had to be paid out of the fund under the control of the court applicable to their payment, if any, and if not then as the commissioner reported the parties litigant would have to be required to pay them in due proportions.

By his exceptions to Commissioner Armstrong's report, E. T. Jones again asserts an interest in the net proceeds arising from a resale of the "Hog Back" land, in face of the fact that it had theretofore been finally adjudicated in this litigation that he had no interest whatever in said tract of land, or in the proceeds arising from a sale thereof, his interest therein having been acquired by John B. Miller; so that the decree of the circuit court recommitting the cause to Commissioner Armstrong to report how the funds under the control of the court should be disbursed rightly directed that the proceeds arising from the resale of the "Hog Back" tract be disbursed, "one-fourth to Mrs. Smith and the remaining three-fourths thereof to John B. Miller, the same including his share and the share of R. E. Miller and E. T. Jones."

Jones, by his exceptions, also asserts an interest in the fund in bank under the control of the court, again ignoring the fact plainly appearing in the record that there were no funds arising from any source to be distributed to the heirs of John Miller.

The learned judge of the trial court, in his memorandum for the decree entered upon the report of Commissioner

Armstrong and the exceptions thereto falls into the error of fixing the net proceeds of the resale of the "Hog Back" tract of land at $152.15, instead of at $1,412.86 as ascertained by the commissioner.

The proceeds of the resale of the "Hog Back" land, other than the $152.15, having been used in the payment of the debts of John Miller, before there could be a surplus for distribution among his children, Mrs. Smith had to contribute the full amount charged against her for the payment of John Miller's debts, and for equal division, by the deed of October 5, 1872, of which she owed a balance of $1,139.94 as of November 15, 1910.

The record with the present appeal in this cause, and the printed briefs of counsel for the respective litigants, as well as the records with the former appeals, have been given as careful examination and consideration as was possible, resulting in the conclusion that the report of Commissioner Armstrong as to how the funds remaining under the control of the circuit court should be disbursed is substantially correct; that the exceptions of Mrs. Smith and E. T. Jones thereto should all have been overruled, the report of the commissioner confirmed, and the cause proceeded with to a final decree in accordance with said report.

The decrees appealed from are reversed, and the cause remanded for further proceedings therein not in conflict with this opinion.

*Reversed.*