J. T. LEDWELL v. SHENANDOAH MILLING COMPANY, INC., AND A. A. ROUNDEBUSCH AND T. COLEMAN ANDREWS, AND GEORGE PILCHER, RECEIVERS OF SHENANDOAH MILLING COMPANY, INC., DEFENDANTS—AND SOUTHERN BANK OF NORFOLK, INTERPLEADER.

(Filed 29 March, 1939.)

1. **Appeal and Error § 6e—Testimony of witness having no personal knowledge of facts will be considered when no objection is made giving opportunity to prove transaction by competent witness.**

Where an agent of a bank testifies as to the circumstances under which the draft in question was deposited in the bank, but later admits, on cross-examination, that he had no recollection of the particular transaction in suit, *held,* his testimony must be considered on appeal in so far as it is pertinent to the issue in the absence of a motion by the adverse party to strike out, since if the motion to strike had been made and allowed the bank might have proved the transaction by its agent who handled it.

2. **Courts § 11: Bills and Notes § 10c—**

*Held:* Even conceding appellant's contention that the laws of the State of Virginia govern the legal effect of a deposit of a draft in a bank in that State, drawn on a resident of this State, appellant's contention that under the laws of Virginia such deposit vested title to the draft in the bank as a matter of law is untenable.

3. **Bills and Notes § 10c—Whether deposit of draft in bank constitutes the bank a purchaser or agent for collection depends upon the facts.**

Where a check or draft is deposited in a bank as cash and credited to the account of a depositor with the right to check against the deposit in the usual course of business without restrictions or contemporaneous agreement with respect thereto, the bank becomes the owner of the check or draft; but when a check or draft is deposited as such, the bank holds same for collection even though the amount is credited to the depositor with the privilege of drawing against it, especially when there is an express agreement giving the bank the right to cancel the credit if the paper is not paid.

4. **Same—**

Where a bank allows a depositor to draw against uncollected items deposited for collection, the bank is entitled to hold the paper so deposited or the proceeds thereof at least as collateral security, since its act in permitting withdrawal by the depositor constitutes a waiver of the original agreement of deposit for collection only.

5. **Same—**

In the absence of any specific agreement, the intention of the parties determines whether a bank is the owner or an agent for collection of items deposited in it.

**6. Same: Bills and Notes § 27—Evidence held for jury on question of waiver of original agreement that bank should act as agent for collection.**

The draft in question was deposited in the intervener bank under a written agreement on the deposit slip that the bank should act as agent for collection. Plaintiff attached the proceeds of the draft to satisfy a debt owed plaintiff by the depositor. The bank claimed the funds and introduced evidence that it had credited the account of the depositor with the amount of the draft at the time of deposit and that it had permitted the depositor to draw against the credit so made. *Held:* The evidence should have been submitted to the jury on the question of whether the bank's permitting the depositor to draw against the credit constituted a waiver of the original agreement that the bank should act as agent for collection, entitling the bank to the proceeds of the draft as against a creditor of the depositor, and an instruction that the jury should answer the issue against the intervening bank if it should find the facts to be as all the evidence tended to show, is error.

APPEAL by intervener from *Williams, J.,* at October-November Term, 1938, of LEE. New trial.

Civil action to subject proceeds of draft with bill of lading attached, drawn by defendant through the Southern Bank of Norfolk on Howard-Bobbitt Company, of Sanford, N. C., to satisfy a debt the plaintiff alleges is due and owing him by the defendants, which proceeds were seized under writ of attachment.

On 10 May, 1938, the receivers of Shenandoah Milling Company shipped a carload of flour from Norfolk, Va., to Howard-Bobbitt Company, Sanford, N. C. At the same time the receivers drew a sight draft on Howard-Bobbitt Company, payable to the Southern Bank of Norfolk, for the purchase price of the flour in the sum of $913.03. Bill of lading was attached to the draft. The Norfolk Bank credited the amount of the draft to the account of the receivers and forwarded the draft for collection. Upon presentation of the draft to the drawee through the National Bank of Sanford it was paid 12 May, 1937. The plaintiff instituted this action 11 May, 1938, and procured the issuance of a warrant of attachment, which was served upon the National Bank of Sanford, attaching the proceeds of said draft. The plaintiff seeks to have said sum condemned and applied to the satisfaction of a debt for services rendered he alleges is due him by the Shenandoah Milling Company.

After the service of the attachment the Southern Bank of Norfolk filed an interplea and bond in accord with the statute and the sum in the hands of the National Bank of Sanford was paid to it.

The cause came on to be heard in the court below on the issue of title to said fund raised by the interplea. Under the instruction of the court

LEDWELL *v.* MILLING CO.

that: "The court, therefore, holds as a matter of law, and instructs you, that if you find the facts to be as all the evidence tends to show, as a matter of law, that as to the first issue, 'Did the intervener, Southern Bank of Norfolk, take the draft as a purchaser or for collection?' I instruct you that you will answer that issue, 'For collection.'" The jury answered the first issue, "For collection," and found under a like instruction in answer to the second issue that the intervener is not the owner of the proceeds of said draft. Thereupon, the court signed judgment against the intervener and the intervener appealed.

*Gavin & Jackson for plaintiff, appellee.*
*Langston, Allen & Taylor for intervener, appellant.*

BARNHILL, J. The draft, the proceeds of which are here involved, was made payable to the Southern Bank of Norfolk and was not endorsed by the intervener. On the deposit slip issued to the depositor of the draft at the time there was printed: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited." There was entered thereunder the following: "B.L.S.D., Howard-Bobbitt Company, $913.03."

The vice president of the intervener, as a witness for intervener, testified that the draft was brought to his bank 10 May and accepted as a deposit and the proceeds thereof credited to the account of defendants in their regular checking account; that the bank took the draft for value and that it has never been charged back and the bank has not been refunded by the Shenandoah Milling Company. The intervener offered further evidence tending to show that, while the defendants at all times had on deposit in the intervener bank a sum more than sufficient to permit the intervener to charge the item back to the account of the receivers without creating an overdraft, the defendants in fact withdrew from the account the proceeds of the draft and that the balance was created by other deposits.

In forwarding the draft for collection the intervener, on the letter or remittance sheet, designated the Shenandoah Milling Company as the owner of the draft enclosed for collection.

The questions presented by the appeal are: (1) Is the intervener the holder of said draft in due course for value as a matter of law, and (2) If not, is there conflicting evidence, requiring the submission of the cause to a jury under appropriate instructions?

The intervener's witness, on cross-examination, testified that if he handled the transaction at the time the draft was deposited he had no recollection thereof. If it be conceded that this rendered incompetent his former testimony, there was no motion to strike. Had a motion to strike been made and allowed the intervener would have been at liberty to offer its agent who actually handled the transaction. Under these circumstances we are required to consider the question involved as if this testimony, in so far as it is pertinent, was competent, giving due consideration thereto, together with the other evidence offered, to determine the questions presented. *Morgan v. Benefit Society,* 167 N. C., 262, 83 S. E., 479.

The appellant earnestly contends that the contract under which the Southern Bank of Norfolk received the draft from the defendants was made in Virginia and that the Virginia law is controlling. As to this, we do not take issue. It further contends, however, that under the Virginia law the passing of the draft to the appellant vested title thereto in the bank as a matter of law. In support of this position, appellant offered in evidence and relies upon *McAuley v. Morris Plan Bank of Virginia,* 156 S. E., 418, and *Fourth National Bank of Montgomery v. Bragg,* 11 A. L. R., 1034. After an examination of these and other Virginia cases we are of the opinion that appellant's position in this respect is not sustained.

In *Fine v. Receiver of Dickenson County Bank,* 175 S. E., 863, the Virginia Court declares the legal effect of a deposit made under a deposit slip in language identical with the one involved in the instant case. The plaintiff was a regular customer of the bank. The check was deposited and credited to the depositor's account prior to insolvency of the bank and paid after appointment of receivers. It is said by the Court: "The deposit slip delivered to and accepted by Fine constituted an express agreement that the bank should act as the agent of Fine to collect this check and then deposit its proceeds to Fine's credit. Though it speaks of the check being credited to Fine, it is plain that, if it is credited to him, it is to be done merely for bookkeeping convenience, and that Fine shall acquire no rights by virtue of its being so credited unless and until the check is paid. The bank selected and used this form of deposit slip for its protection. But, when it did so, it assumed the

burdens thereof no less than it became entitled to its benefits. This case is controlled by *Miller's Trustees v. Smith,* 114 Va., 619, 77 S. E., 462. The facts of this case are materially different from those in *Fourth National Bank v. Bragg,* 127 Va., 47, 102 S. E., 649, 11 A. L. R., 1034; and *McAuley v. Morris Plan Bank,* 155 Va., 777, 156 S. E., 418.

"The cashier of the bank testifies that the bank would have permitted Fine to check against this 'deposit,' but there is nothing to show that this was communicated to Fine. Nor do we find anything in the evidence which we think constituted a waiver either by the bank or by Fine of the contract made between them by the delivery to him and the acceptance by him of this deposit slip." Thus we find that the Supreme Court of Virginia has held that the cases relied upon by the appellant are not here in point.

Where a check or draft is deposited in bank as cash and credited to the account of the depositor with the right to check against the proceeds thus credited in the usual course of business with no restricting contemporaneous agreement with respect thereto, the relationship of creditor and debtor is created and the bank becomes the owner of the check or draft. The act of crediting when nothing else appears is equivalent to a payment in money. *Miller v. Norton & Smith,* 77 S. E., 452; *Fayette National Bank v. Summers,* 105 Va., 689; *Greensburg Nat. Bank v. Syer,* 113 Va., 53; *Woodward v. Trust Co.,* 178 N. C., 184. According to the majority of cases, where there is no definite understanding between the depositor and bank as to the ownership of paper, but the paper is endorsed by an unrestricted endorsement and deposited in the usual course of business with the bank, which gives credit to the depositor for the amount thereof, with the right to draw thereon, title passes to the bank. *Fourth Nat. Bank v. Bragg, supra.* Other authorities are cited in the notations. 11 A. L. R., 1060.

When a check or draft is deposited as such the bank holds the same for collection even though the amount of the check or draft was credited to the depositor with the privilege of drawing against it. This is particularly true when the deposit is accompanied by an express agreement, such as that used in the instant case. If the check or draft was in fact delivered to the bank for collection or for collection and credit a credit to the customer before collection is deemed merely provisional, which the bank may cancel if the paper is not paid. If such paper is delivered to the bank for collection and credit the credit of the amount to the customer before and in anticipation of collection is merely provisional and the privilege of drawing against it merely gratuitous, especially when the bank reserves the right to cancel the credit or charge back the paper to the customer's account at any time. *Greensburg Nat. Bank v.*

*Syer, supra; Fine v. Receiver of Dickenson County Bank, supra; Re State Bank,* 56 Minn., 119, 45 A. S. R., 454; *Miller v. Norton & Smith, supra.*

Where the paper is deposited as such and credited to the account of the customer and the customer thereafter draws checks against such proceeds which are honored by the bank and the proceeds are thus withdrawn this constitutes a waiver of the original agreement and the bank becomes the holder of the instrument, at least as collateral. *Standard Trust Co. v. Commercial National Bank,* 166 N. C., 112, 81 S. E., 1074; *Elk Valley Bank v. State Road Commission,* 156 S. E., 889; *Miller v. Norton & Smith, supra; Fourth Nat. Bank v. Bragg, supra,* in which the Court quotes with approval the general rule as stated in 6 A. L. R., 259, as follows: "A bank that gets possession of a negotiable instrument by giving the one who presents it credit for the full amount of the proceeds, and honors his checks or drafts to the same amount, or parts with some security, or in some other way makes himself liable for the amount of the deposit outside of the obligation created by the mere deposit, on the faith of the instrument, is the holder of the instrument for value."

Where a deposit is made without any specific agreement the intention of the parties at the time is controlling. *Miller v. Norton & Smith, supra; Fayette Nat. Bank v. Summers, supra; Greensburg Nat. Bank v. Syer, supra; Fourth Nat. Bank of Montgomery v. Bragg, supra,* in which it is said: "The result of the decision of this Court in *Fayette Nat. Bank v. Summers* (105 Va., 689), and of the Alabama case of *National Commercial Bank v. Miller* (77 Ala., 173, 54 Am. Rep., 50), undoubtedly is that the question is one of intention of the parties, and both of these cases, as well as the other cases in Virginia and Alabama, to which our attention has been directed, show a strong tendency to leave the question to the jury wherever there is any evidence to rebut the *prima facie* presumption that a cash deposit is intended to vest in the bank the title to the instrument pursuant to which the cash deposit is made." The same rule applies when there is evidence tending to show a waiver of the original agreement that the bank should act as collector.

Under the evidence in this cause it clearly appears that the draft in question was originally deposited with the appellant under a written agreement that the bank was to act as collector. This agreement being in writing, it is not subject to contradiction by proof that another and a different agreement was in fact at the time made. There is, however, evidence offered by the appellant from which a jury might permissibly draw the conclusion that after the proceeds of this draft were deposited in the appellant bank they were drawn against by the depositor and the checks were honored by the bank, and that in fact, the proceeds of the

draft were actually paid to the depositor. If this be the fact, then under the law the appellant bank has an interest in the paper superior to that of any creditor of the drawer who might attempt to attach the proceeds thereof.

Upon a consideration of the authorities on the subject, we are of the opinion that the appellant has offered sufficient evidence to require the submission of this cause to a jury on the question as to whether the original agreement that the bank should act .as collector only was thereafter waived.

New trial.